## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

JOSEPH EDWARD DIXON,

               Plaintiff,

      v.

ROGER WILLIAMS, et al.,

               Defendants.

CIVIL ACTION NO. 4:13-CV-02762

(BRANN, J.)
(MEHALCHICK, M.J.)

### REPORT AND RECOMMENDATION

This is a civil rights action, initiated upon the filing of a *pro se*, *in forma pauperis* complaint on October 7, 2013, seeking declaratory relief and an award of compensatory and punitive damages for alleged violations under the "Fourth, Fifth, Eighth and Fourteenth Constitutional Amendment[s]," the Uniform Criminal Extradition Act, as adopted in Pennsylvania, 42 Pa.Cons.Stat.Ann. §§ 9121–9144, and the Federal Extradition Statute, 18 U.S.C. § 3182. (Doc. 39, at 3). In his amended complaint, *pro se* Plaintiff Joseph Edward Dixon, pleads claims under 42 U.S.C. § 1983 against Pennsylvania State Trooper Roger Williams and a number of John Doe Defendants. (Doc. 39). Pending before this Court is Defendant Pennsylvania State Trooper Roger Williams' motion to dismiss. (Doc. 42). For the reasons provided herein, this Court recommends granting Defendant's motion in part.

### I.   FACTUAL BACKGROUND

*Pro se* Plaintiff Joseph Edward Dixon filed the instant civil rights action pursuant to 42 U.S.C. § 1983 on October 7, 2013 in the United States District Court for the Western District of New York. (Doc. 1). On October 21, 2013 the case was transferred to the United States District Court for the Middle District of Pennsylvania. (Doc. 3). Plaintiff subsequently filed an amended

complaint that the Clerk of Court inadvertently docketed as a new civil action. On August 19, 2014, the Court directed the Clerk of Court to consolidate both actions by filing the document as an amended complaint to the original action. (Doc. 29).

The following facts are derived from Dixons amended complaint, which for purposes of deciding the Defendant's motions to dismiss, this Court must accept as true. *Fowler v. UPMC Shadyside,* 578 F.3d 203, 210 (3d Cir. 2009). Specifically, Dixon challenges the validity of his detention by Pennsylvania State Trooper Roger Williams and several John Doe Defendants and surrender to the New York state troopers in violation of the Fourth, Fifth, Eighth, and Fourteenth Amendments, the Uniform Criminal Extradition Act, as adopted in Pennsylvania, and the Federal Extradition Statute. (Doc. 39). Dixon alleges that New York state troopers provided Defendants with a photograph of him for identification purposes and instructed Defendants to locate and detain Dixon, who was thought to be residing in Pennsylvania, until such time as New York state troopers could arrive to transport Dixon across state lines, as Dixon was wanted for questioning in New York in connection with a criminal matter that allegedly took place in New York. (Doc. 39). On November 25, 2011, Dixon alleges he was approached by Defendants while drinking at the Elms Tavern in Tioga, Pennsylvania. (Doc. 40, at 1). Defendants demanded that Dixon provide them with his identification, which they then proceeded to compare to an "8 x 10 photograph" they had in their possession. (Doc. 40, at 1). Upon being identified, Dixon was grabbed by the arms and escorted to the parking lot, where he was positioned between a number of Pennsylvania police vehicles. When Dixon inquired as to why he was being "arrested," Defendants responded that the New York state troopers "wanted to speak to [him]." (Doc. 40, at 1). Dixon also alleges that he was threatened with violence if he attempted to leave. (Doc. 40, at 2). After thirty minutes, New York state troopers

arrived at the Elms Tavern parking lot. (Doc. 40, at 2). Once New York state troopers arrived, Dixon alleges that he was forcefully pushed into the back seat of a New York police vehicle. Officers then drove him against his will from the Elms Tavern parking lot across state lines into New York for questioning without "a certified extradition, nor an[ ] endorsement, or . . . a signed requisition for his return to New York State." (Doc. 39, at 4).

On October 6, 2014, the Defendant Pennsylvania State Trooper Roger Williams filed a motion to dismiss the complaint in its entirety pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Doc. 42). On October 15, 2014, Defendant filed a brief in support of his motion. (Doc. 45). October 23, 2014, Dixon filed a "reply" in opposition to the motion to dismiss, and on November 5, 2014, he filed a "brief" in response. (Doc. 47; Doc. 48). On December 2, 2014, Defendant filed his reply brief. (Doc. 55). On January 23, 2015, Dixon filed yet another brief in opposition to Defendant's motion to dismiss. (Doc. 61).

The motion is now ripe for decision.

## II.   STANDARD OF REVIEW

### A.   RULE 12(B)(6) STANDARD

Rule 12(b)(6) provides that a complaint should be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The United States Court of Appeals for the Third Circuit, discussing the evolving standards governing pleading practice in federal court, has stated in relevant part:

> Standards of pleading have been in the forefront of jurisprudence in recent years. Beginning with the Supreme Court's opinion in *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007), continuing with our opinion in *Phillips* [*v. County of Allegheny*, 515 F.3d 224 (3d Cir. 2008)]and culminating recently with the Supreme Court's decision in *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S. Ct. 1937, 1955, 173 L. Ed. 2d 868 (2009), pleading standards have seemingly shifted from simple notice pleading to a more heightened form of

pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss.

*Fowler*, 578 F.3d at 209-10.

In considering whether a complaint fails to state a claim upon which relief may be granted, the court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom are to be construed in the light most favorable to the plaintiff. *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994). However, a court "need not credit a complaint's 'bald assertions' or 'legal conclusions' when deciding a motion to dismiss." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997). A court need not assume that a plaintiff can prove facts that the plaintiff has not alleged. *Associated Gen. Contractors of Cal. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983). A plaintiff must provide some factual grounds for relief, which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555. In *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), The Supreme Court of the United States held that, when considering a motion to dismiss, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. In deciding a Rule 12(b)(6) motion, the Court may consider the facts alleged on the face of the complaint, as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

B. *Sua Sponte Dismissal Standard*

Under 28 U.S.C. § 1915A, the Court is obligated to screen a civil complaint in which a prisoner is seeking redress from a governmental entity or officer or employee of a governmental entity. 28 U.S.C.§ 1915A(a); *James v. Pa. Dep't of Corr.*, 230 Fed. App'x 195, 197 (3d Cir. 2007). A plaintiff proceeding *in forma pauperis* is also subject to additional screening pursuant to 28 U.S.C. § 1915(e)(2). In screening a complaint, a Court must dismiss the complaint if it "fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915A(b)(1). "The court's obligation to dismiss a complaint under [these] screening provisions is not excused even after defendants have filed a motion to dismiss." *Banks*, 568 F. Supp. 2d at 589. In performing this mandatory screening function, a district court applies the same standard applied to motions to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Mitchell v. Dodrill*, 696 F. Supp. 2d 454, 471 (M.D. Pa. 2010); *Banks*, 568 F. Supp. 2d at 588.

## III. Discussion

A. *Heck v. Humphrey*

The gravamen of Defendant's motion to dismiss is that Dixon's claims are not cognizable under § 1983 pursuant to the favorable termination rule articulated by the Supreme Court in *Heck v. Humphrey*, 512 U.S. 477 (1994). In *Heck*, the Supreme Court held that, where judgment in favor of a plaintiff in a § 1983 action for damages would necessarily imply the invalidity of the plaintiff's conviction or sentence, the plaintiff must first demonstrate "that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus [under] 28 U.S.C. § 2254." *Heck*, 512 U.S. at 486–87. In *Wilkinson v. Dotson*, 544 U.S. 74 (2005), the Supreme Court

reaffirmed this rule and broadened it to encompass equitable remedies as well, holding that "a state prisoner's § 1983 action is barred (absent prior invalidation) — no matter what the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings) — if success in that action would necessarily demonstrate the invalidity of confinement or its duration." *Wilkinson*, 544 U.S. at 81–82.

Dixon includes allegations of false arrest, illegal search and seizure, and excessive force within his amended complaint. "This is significant because *Heck* only bars claims which 'seek [ ] to recover damages for an unconstitutional conviction, imprisonment, or other harm caused by actions whose *unlawfulness would render the conviction or sentence unlawful*.'" *Jackman v. Smith*, 190 F. App'x 108, 109 (3d Cir. 2006)(citing *Torres v. McLaughlin,* 163 F.3d 169, 173 (3d Cir. 1998))(emphasis added). Generally, the substantive bar would not preclude Fourth Amendment claims of unreasonable seizure, false arrest, and excessive force. *See Sanders v. Downs*, 420 F. Appx. 175, 179 (3d Cir. 2011)(*Heck* "typically does not bar actions for Fourth Amendment violations"); *Montgomery v. De Simone,* 159 F.3d 120, 126 n.5 (3d Cir. 1998); *Nelson v. Jashurek,* 109 F.3d 142, 145-46 (3d Cir. 1997); *see also Broadwater v. Fow,* 945 F.Supp.2d 574, 583–84 (M.D. Pa. 2013) (allowing Fourth Amendment search and excessive force claims to proceed under *Heck* because judgment on those claims would not necessarily invalidate outstanding conviction). *But see Heck*, U.S. at 486-87 n.6 (noting that a plaintiff convicted of resisting arrest would be precluded from bringing a Fourth Amendment claim for unreasonable seizure because, to prevail on that claim, "he would have to negate an element of the offense of which he had been convicted"). However, in determining whether success on a claim would necessarily impugn the integrity of the plaintiff's underlying conviction, the Third Circuit

requires that district courts undertake a fact-intensive inquiry for each claim raised by the plaintiff. *Gibson v. Superintendent of NJ Dep't of Law & Pub. Safety-Div. of State Police*, 411 F.3d 427, 448 (3d Cir. 2005) *overruled on other grounds by Dique v. N. J. State Police*, 603 F.3d 181, 188 (3d Cir. 2010); *Brown v. Chardo,* No. 1:11–CV–0638, 2012 WL 983553, at *7 (M.D. Pa. Mar. 22, 2012) ("[T]o determine whether the bar applies, the district court must determine whether a judgment for the plaintiff in the Section 1983 action would necessarily imply the invalidity of the plaintiff's conviction or sentence.").

Here, the Court cannot conduct a detailed factual inquiry into whether Dixon's claims would necessarily imply the invalidity of his underlying conviction, as Dixon does not explicitly state the nature of his underlying criminal conviction, and this Court cannot locate, and therefore take judicial notice of the New York state court docket report detailing his state criminal proceedings. Thus, because this necessary fact is absent from the amended complaint, the Court cannot conclude at this time that the favorable termination rule bars Plaintiff's claims. Accordingly, the Court turns to the merit of Plaintiff's claims.

### B. Fourth Amendment Illegal Seizure/False Arrest Claim

In his amended complaint, Dixon alleges that the above-captioned Defendants illegally seized Dixon's person in violation of his rights under the Fourth Amendment.[1] Specifically, he

---

[1] In reviewing Dixon's amended complaint, it is this Court's understanding that Dixon contends that his detention and subsequent arrest violated his Fourteenth Amendment due process rights. In construing Dixon's amended complaint liberally, it appears that his claims rest on the substantive component of the due process clause. To the extent Plaintiff brings claims under the substantive component of the due process clause, such claims must be dismissed. Specifically, "[w]here a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims.'" *Albright v. Oliver,* 510 U.S. 266, 273 (1994) (quoting *Graham v. Connor,*
(footnote continued on the next page)

alleges that he was subject to a prolonged, arbitrary detainment by Pennsylvania state troopers solely at the direction of New York state troopers, which amounted to an arrest. Defendant contends that Dixon has failed to state a claim under the Fourth Amendment because probable cause existed to detain him. (Doc. 45, at 4).

The Fourth Amendment protects citizens from unreasonable searches and seizures. U.S. Const. Amend. IV. "The Fourth Amendment is not, of course, a guarantee against *all* searches and seizures, but only against *unreasonable* searches and seizures." *United States v. Sharpe,* 470 U.S. 675, 682 (1985) (emphasis in original). The Fourth Amendment's requirement that searches and seizures be founded on an objective justification governs all seizures of the person, from formal arrests to detentions short of traditional arrest. "A claim for unlawful detention under the Fourth Amendment requires [p]laintiff to establish that he was subjected to a Fourth Amendment seizure [(whether it be a formal arrest or prolonged detainment),] without probable cause." *Kauffman v. Barbagello*, No. 1:13-CV-00659, 2013 WL 6388487, at *18 (M.D. Pa. Dec. 5, 2013) (citing *James v. City of Wilkes–Barre,* 700 F.3d 675, 682 (3d Cir. 2012)). An officer has probable cause if, "at the moment the [stop or ] arrest was made . . . the facts and circumstances within [the officer's] knowledge and of which [he] had reasonably trustworthy information were sufficient to warrant a prudent man in believing that [the suspect] had committed or was committing an offense." *Beck v. Ohio,* 379 U.S. 89, 91(1964).

---

490 U.S. 386, 395 (1989)). As the "Fourth Amendment provides an explicit textual source of constitutional protection to [Dixon], any reliance o[n] the substantive component of the Due Process Clause is misplaced." *O'Malley v. Lukowich*, No. 3:08-CV-0680, 2008 WL 4861477, at *6 (M.D. Pa. Nov. 7, 2008). Accordingly, it is recommended that Plaintiff's Fourteenth Amendment Due Process claim be dismissed with prejudice.

In a situation where an officer does not independently acquire personal knowledge of the circumstances creating a reasonable suspicion or probable cause to conduct a stop or arrest, but rather relies solely on information provided by another law enforcement agent as a part of a joint investigative endeavor, as appears to be the case here, courts may employ the 'collective knowledge doctrine,' under which the knowledge of one law enforcement officer may be imputed to another officer who actually conducted the seizure, search, or arrest. *United States v. Doss*, No. 1:12-CR-0326, 2014 WL 4185336, at *3 (M.D. Pa. Aug. 21, 2014) (citing *United States v. Belle,* 593 F.2d 478, 497 n.15 (3d Cir.1979) (applying doctrine when analyzing whether officers had probable cause to arrest)). However, "[p]robable cause exists only if the statements made by [the investigating] officers are supported by actual facts that can satisfy the probable cause standard." *Rogers v. Powell,* 120 F.3d 446, 453 (3d Cir.1997)( citing *United States v. Hensley,* 469 U.S. 221, 231 (1985)). Indeed, the application of the collective knowledge doctrine hinges on whether the law enforcement officer making the request possessed information that would provide probable cause to arrest or seize the suspect, as the officer who undertook the challenged action is justified only to the extent that the requesting officer had the requisite knowledge to supply probable cause. *Rogers,* 120 F.3d at 453 ("The legality of a seizure based solely on statements issued by fellow officers depends on whether the officers who issued the statements possessed the requisite basis to seize the suspect. Moreover, an officer can lawfully act solely on the basis of statements issued by fellow officers if the officers issuing the statements possessed the facts and circumstances necessary to support a finding of the requisite basis.")

Here, a review of Dixon's amended complaint reveals that Dixon has adduced facts sufficient to survive a motion to dismiss, as he has properly alleged a seizure conducted without probable cause. Specifically, Plaintiff alleges that New York state troopers provided

Pennsylvania state troopers with a photograph of Dixon and requested that Pennsylvania state troopers locate and detain Plaintiff. The complaint further alleges that, on the basis of that request, Defendants detained Plaintiff for thirty minutes until New York state troopers arrived and took him into custody. No facts are presented in the amended complaint regarding the basis for the *New York state troopers' request for detention* such that this Court could employ the collective knowledge doctrine. Thus, accepting as true the Plaintiff's allegations, and drawing all reasonable inferences in favor of Plaintiff, it could be reasonably inferred from the amended complaint that the detention by Defendant was the product of blind reliance on an unverified request by another state's police force, and thus Defendant lacked probable cause to effectuate the seizure.[2] Accordingly, as the facts as alleged make plausible a violation of the Fourth

---

[2] The Court notes Defendant's reference to the term "reasonable articulated suspicion" in his motion to dismiss. (Doc. 45, at 4). Specifically, Defendant states in relevant part: "Because [Defendant] had a reasonable articulated suspicion that Plaintiff was actively being searched for by the New York police who describe Plaintiff as a suspect in a homicide case there was probable cause to detain Plaintiff." (Doc. 45, at 4). It is unclear by that language whether Defendant attempts to characterize the seizure as a brief investigatory stop rather than a prolonged detention amounting to an arrest. The Fourth Amendment protection extends to brief investigatory stops. To conduct a brief, investigatory stop, a police officer must have a reasonable suspicion, grounded in specific and articulable facts, that a person they encounter was involved in or is wanted in connection with a completed felony. *Terry v. Ohio*, 392 U.S. 1 (1968); *United States v. Hensley*, 469 U.S. 221, 229 (1985). "Reasonable suspicion [required for a *Terry* stop] is a less demanding standard than probable cause [necessary for an arrest]. . . . [R]easonable suspicion can arise from information that is less reliable than that required to show probable cause." *United States v. Crandell*, 554 F.3d 79, 84 (3d Cir. 2009) (quoting *United States v. Valentine*, 232 F.3d 350, 353 (3d Cir. 2000) (citations and internal quotations omitted)). To the extent Defendant represents that the seizure constitutes a *Terry* stop merely requiring a reasonable, articulable suspicion, the Court must still deny Defendant's motion to dismiss, as Plaintiff has averred sufficient facts to infer the absence of even a reasonable suspicion justifying the detention. Indeed, this Court is unable to conclude at this procedural juncture based on the allegations in the amended complaint, that the *New York state troopers* on whose instructions the Defendants relied, possessed probable cause or reasonable suspicion to warrant a *Terry stop. See Henley*, 469 U.S. at 223 (holding that when "the police make a *Terry* stop in objective reliance on a flyer or bulletin . . . the evidence uncovered in the course of the stop [will be] admissible if

*(footnote continued on the next page)*

Amendment, the Court recommends denying Defendant's motion to dismiss with respect to Plaintiff's Fourth Amendment illegal detention/false arrest claims.[3]

B. Uniform Criminal Extradition Act Claim

In conjunction with Dixon's Fourth Amendment illegal seizure claim, Dixon specifically references a violation under the Uniform Criminal Extradition Act by Defendants' failure to follow extradition procedures required by federal and state law prior to releasing him into New York's custody. Specifically, Dixon alleges that the Pennsylvania state troopers "physically, and unlawfully handed over [Dixon] to [the New York Police] without certified extradition, nor an[ ] endorsement." (Doc. 39, at 4). "Allegations that state and/or federal extradition statutes have been violated may state a claim under 42 U.S.C.A. § 1983." *Crenshaw v. Checchia*, 668 F. Supp. 443, 444 (E.D. Pa. 1987). The Extradition Act provides that the governor of the asylum state must honor a proper demand " to have arrested and delivered up to the executive authority of any other state of the United States any person charged in that state with treason, felony or other crime, who has fled from justice and is found in this Commonwealth." 42 Pa. Cons. Stat. Ann. § 9123.

Here, it is unclear from the facts alleged in the amended complaint whether Dixon's transport across state lines implicates the Extradition Act and its procedural requirements, as the applicability of the Extradition Act centers on whether criminal charges were pending

---

the police who *issued* the flyer or [radio] bulletin possessed a reasonable suspicion justifying a stop") (emphasis in original); *United States v. Whitfield,* 634 F.3d 742, 745–46 (3d Cir. 2010) (applying collective knowledge doctrine to an investigatory stop); *see also United States v. Brown*, 448 F.3d 239, 248 (3d Cir. 2006).

[3] In so ruling, the Court does not find that reasonable suspicion or probable cause was lacking, only that it was sufficiently pled, and thus, reserves that determination for the summary judgment stage.

against him in New York, whether he was a fugitive from justice there, and whether New York formally demanded his extradition. 42 Pa. Cons. Stat. Ann. § 9123. However, it is clear that Plaintiff has at least alleged that Pennsylvania state troopers 1) restrained the liberty of Dixon within its jurisdiction and 2) caused the plaintiff to be transported into the jurisdiction of New York against his will. *Compare with Ortega v. City of Kansas City, Kan.*, 875 F.2d 1497, 1501 (10th Cir. 1989). In drawing all reasonable inferences in Dixon's favor, such facts sufficiently raise a right to relief above the speculative level. Thus, this Court respectfully recommends denial of Defendant's motion to dismiss with respect to Dixon's claim under the Extradition Act.

### C. EXCESSIVE USE OF FORCE CLAIM

Plaintiff has also asserted an excessive use of force claim against the Defendants who detained him. From what can be gleaned from the amended complaint, Dixon characterizes the manner in which he was seized as involving excessive force, in that he was grabbed by his arms and escorted to the parking lot and subsequently "pushed" into the back seat of a New York Police trooper's vehicle.(Doc. 40, at 2). The Fourth Amendment governs a claim that law enforcement officers used excessive force in the course of making an arrest. *See also Graham,* 490 U.S. at 395 ("[A]ll claims that law enforcement officers have used excessive force-deadly or not- in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard.").To state a claim for excessive use of force under the Fourth Amendment, a plaintiff must show: (1) that a seizure occurred; and (2) that the use of force was objectively unreasonable. *Kopec v. Tate*, 361 F.3d 772, 776 (3d Cir. 2004). The reasonableness standard "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the

suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham,* 490 U.S. at 396.

Clearly, Plaintiff has sufficiently alleged that a seizure occurred. However, Plaintiff fails to describe the nature of the crime at issue, whether officers had reason to believe he posed an immediate threat to their safety, or whether the officers had reason to believe he was actively resisting arrest or attempting to flee. Moreover, aside from Dixon's contention that he was illegally seized, Dixon's amended complaint does not include any factual allegations that would suggest that the force used during his seizure was unnecessary or excessive. "[M]erely because a person has been falsely arrested does not mean that excessive force has been used." *Robinson v. Fetterman,* 378 F. Supp. 2d 534, 544 (E.D. Pa. 2005); *Bodine v. Warwick,* 72 F.3d 393, 400 n.10 (3d Cir. 1995) ("Officers who detain a suspect unlawfully should be liable for the harm proximately caused by their tortious detention, but this will not necessarily include all harm resulting from the otherwise reasonable use of force to carry out the detention."); *Szalabawka v. Russo,* No. 09–88, 2011 WL 7776786, at *13 (W.D. Pa. Sept.28, 2011) ("[C]laims of excessive force and false arrest implicate different aspects of the Fourth Amendment's 'reasonableness' requirement: the probable cause requirement concerns the justification for a seizure while the proscription against excessive force concerns the manner in which the seizure is carried out."). As the amended complaint does not contain "'sufficient factual matter' to show that [his excessive force] claim is facially plausible," it is recommended that Plaintiff's Fourth

Amendment excessive force claim against Defendant be dismissed *sua sponte*. *Fowler,* 578 F.3d at 210 (quoting *Iqbal,* 556 U.S. at 678).[4]

### D. EQUAL PROTECTION CLAIM

In his amended complaint, Plaintiff also claims a violation of his equal protection rights, but alleges no facts whatsoever to support such a claim. Indeed, Dixon has merely offered only bare, conclusory allegations without alleging any facts from which this Court could draw reasonable inferences that an equal protection violation occurred. As the Court need not credit bare, conclusory allegations or formulaic recitation of elements of a cause of action, this Court recommends *sua sponte* dismissal of Dixon's equal protection claim for failure to state a claim upon which relief can be granted.

### E. LEAVE TO AMEND

Ordinarily, the plaintiff may be granted "leave [to amend,] . . . when justice so requires." *See Foman v. Davis*, 371 U.S. 178, 182); *Lorenz v. CSX Corp.*, 1 F.3d 1406, 1414 (3d Cir.1993). The Third Circuit has acknowledged that a district court has "substantial leeway in deciding

---

[4] The Court notes that Dixon has also failed to adequately allege personal involvement on the part of Defendant Pennsylvania State Trooper Roger Williams with respect to his excessive use of force claim. In order to prevail on a §1983 claim, the plaintiff must sufficiently demonstrate personal involvement on the part of the defendant. Indeed, a "defendant in a civil rights action must have personal involvement in the alleged wrongdoing; liability cannot be predicated solely on the operation of *respondeat superior." Evancho v. Fisher,* 423 F.3d 347, 353 (3d Cir. 2005) (quoting *Rode v. Dellarciprete,* 845 F.2d 1195, 1207 (3d Cir. 1988)). Individual liability can only be imposed if the state actor played an "affirmative part" in the complained-of misconduct. *Chinchello v. Fenton,* 805 F.2d 126, 133 (3d Cir. 1986). "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." *Rode,* 845 F.2d at 1207. Here, the sparse allegations do not demonstrate Defendant Williams' involvement in the alleged misconduct. Therefore, this Court would alternatively recommend dismissal of Dixon's excessive use of force claim against Defendant Williams for failure to state a claim on the basis that Dixon has failed to properly allege personal involvement on the part of this named Defendant.

whether to grant leave to amend." *Lake v. Arnold,* 232 F.3d 360, 373 (3d Cir.2000). "Denial of leave to amend a complaint is especially appropriate where a party has already been given the opportunity to amend the complaint." *In re Avandia Mktg., Sales Practices & Products Liab. Litig.,* 564 F. App'x 672, 673 (3d Cir. 2014)(citing *Lake,* 232 F.3d at 373("[W]e are inclined to give the District Court even broader discretion when, as here, the court has already granted the requesting party an opportunity to amend its complaint."). Indeed, "[a]llowing leave to amend where 'there is a stark absence of any suggestion by the plaintiffs that they have developed any facts since the action was commenced, which would, if true, cure the defects in the pleadings . . . , would frustrate Congress's objective in enacting this statute of 'provid[ing] a filter at the earliest stage (the pleading stage) to screen out lawsuits that have no factual basis.'" *Cal. Pub. Emples'. Ret. Sys. v. Chubb Corp.*, 394 F.3d 126, 164 (3d Cir. 2004) (citation omitted). Here, Plaintiff had already amended his complaint and yet failed to allege sufficient facts with respect to his due Process, excessive use of force, and equal protection claims. Accordingly, this Court recommends that Plaintiff not be given further leave to amend his complaint.

## IV. RECOMMENDATION

Based on the foregoing, it is recommended that:

1. The Defendant's motion to dismiss Plaintiff's amended complaint (Doc. 42) be **GRANTED IN PART AND DENIED IN PART**;

2. Plaintiff's Fourteenth Amendment due process claim be dismissed with prejudice for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure;

3. Plaintiff's Fourteenth Amendment equal protection claim be dismissed with prejudice for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure;

4. Plaintiff's Fourth Amendment excessive use of force claim be dismissed with prejudice for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure;

5. Plaintiff be permitted to proceed with his Fourth Amendment false arrest/illegal seizure claims;

6. Plaintiff be permitted to proceed with his claims under the Pennsylvania Uniform Criminal Extradition Act;

7. This matter be remanded to the undersigned for further proceedings.

BY THE COURT:

Dated: August 3, 2015

*s/ Karoline Mehalchick*

**KAROLINE MEHALCHICK**
**United States Magistrate Judge**

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

JOSEPH EDWARD DIXON,

                Plaintiff,

      v.

ROGER WILLIAMS, et al.,

                Defendants.

CIVIL ACTION NO. 4:13-CV-02762

(BRANN, J.)
(MEHALCHICK, M.J.)

## NOTICE

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing **Report and Recommendation** dated **August 3, 2015**. Any party may obtain a review of the Report and Recommendation pursuant to Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636(b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Dated: **August 3, 2015**

                                        *s/ Karoline Mehalchick*
                                    **KAROLINE MEHALCHICK**
                                    **United States Magistrate Judge**