# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOSEPH EDWARD DIXON,<br><br>          Plaintiff,<br><br>     v.<br><br>ROGER WILLIAMS, et al.,<br><br>          Defendants. | CIVIL ACTION NO. 4:13-CV-02762<br><br>(BRANN, J.)<br>(MEHALCHICK, M.J.) |

## **REPORT AND RECOMMENDATION**

Before the Court are cross-motions for summary judgment filed by *pro se* Plaintiff Joseph Edward Dixon (Doc. 119) and Defendant Roger Williams (Doc. 123). Dixon moves for summary judgment, asserting he was detained in a manner violating numerous Constitutional rights by Pennsylvania State Police while awaiting the arrival of New York State Police to question him on the death of Dolores Warner in New York. (Doc. 119). Williams moves for summary judgment on the grounds that the stop of Dixon by Pennsylvania State Police—made at the behest of the New York State Police—was based upon sufficient information and did not result in a violation of Dixon's Constitutional rights. (Doc. 123). For the following reasons, it is recommended that Defendant's motion be granted and summary judgment be entered in Defendants' favor.

I.   **FACTUAL BACKGROUND**[1]

New York State Police ("NYSP") discovered the body of Dolores Warner at her home on November 24, 2011, in Bath, New York. (Doc. 123, at 1). Determining Warner's death to be the result of homicide, NYSP began an investigation in which multiple interviewees identified Dixon as Warner's ex-boyfriend, mentioning instances in Dixon's relationship with Warner that had caused them concern for her safety and well-being. (Doc. 124, at 1-4). On November 25, 2011, the NYSP contacted the Pennsylvania State Police ("PSP"), requesting assistance in locating Dixon as a person of interest in the case. (Doc. 123, at 5). No charges were pending, nor criminal proceedings initiated, against Dixon at that time. NYSP Investigator Kemp met

---

[1] As a preliminary matter, Dixon failed to provide a statement of facts in support of his motion or his brief in opposition to Williams' motion, both a violation of Local Rule 56.1.

**LR 56.1 Motions for Summary Judgment.**

A motion for summary judgment filed pursuant to Fed.R.Civ.P.56, shall be accompanied by a separate, short and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried.

The papers opposing a motion for summary judgment shall include a separate, short and concise statement of the material facts, responding to the numbered paragraphs set forth in the statement required in the foregoing paragraph, as to which it is contended that there exists a genuine issue to be tried.

**Statements of material facts in support of, or in opposition to, a motion shall include references to the parts of the record that support the statements.**

**All material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party.**

Local Rule 56.1 (emphasis added).

with Defendant, Pennsylvania State Police Investigator Roger Williams, providing Williams with a photograph and description of Dixon. (Doc. 123, at 5).

Upon information, Williams came to find Dixon at Elm's Tavern in Tioga, Pennsylvania around 3:30 p.m.[2] Williams entered and approached Dixon, requesting Dixon identify himself, whereupon Williams informed Dixon that the NYSP wanted to speak with him outside. (Doc. 138, at 2). Dixon left with Williams and the pair waited outside for the NYSP to arrive.[3] Upon the arrival of Investigator Kemp, Dixon was transported back to New York for questioning. After questioning, he was arrested for the murder of Dolores Warner.

II. **PROCEDURAL HISTORY**

On October 7, 2013, Dixon brought a § 1983 action in the Western District of New York against Williams and five John Does PSP officers in their individual and official capacities. (Doc. 1). On November 12, 2013, the case was transferred to the Middle District of Pennsylvania. (Doc. 4). Upon direction of the Court, Dixon filed an amended complaint on September 29, 2014. (Doc. 39). Williams responded with a Rule 12(b)(6) motion to dismiss on

---

[2] According to Dixon, NYSP contacted his friend "Kathy," who informed the police of Dixon's intention to go to Elm's. (Doc. 119, at 2). Dixon contends the NYSP then relayed this information to the PSP. (Doc. 119, at 2). Williams testified he did not know Dixon was at Elm's. (Doc. 119, at 51). Instead, Williams said he went to Elm's upon information from the NYSP that a subject matching Dixon's description was seen at a nearby mini-mart. (Doc. 119, at 50-51). How Williams came to find Dixon at Elm's is immaterial. While Dixon offers his timeline of events as part of "collusion to abduct and kidnap" him, no dispute exists that the NYSP and PSP were working together to locate Dixon.

[3] Williams claims Dixon left Elm's voluntarily, which Dixon denies. The length of time they waited for the NYSP is also in dispute. The Court finds both of these factual disputes immaterial to the remaining claims in this case, namely whether Defendants had reasonable suspicion to stop Dixon, and whether Defendants' actions violated the Uniform Extradition Act.

October 6, 2014. (Doc. 42). The Court recommended granting Williams' motion in part, dismissing Dixon's Fourteenth Amendment due process and equal protection claims and Fourth Amendment excessive force claims, with prejudice. (Doc. 65). The Court recommended that Dixon's Fourth Amendment false arrest/illegal seizure claims and those under the Pennsylvania Uniform Criminal Extradition Act remain. (Doc. 65). On September 28, 2015, the Court's recommendation was adopted in full. (Doc. 73). On April 25, 2016, Dixon filed his motion for summary judgment. (Doc. 119). Williams filed his own motion for summary judgment on May 6, 2016. (Doc. 123).

III.     **STANDARD OF REVIEW**

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment should be granted only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A fact is "material" only if it might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of material fact is "genuine" only if the evidence "is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248. In deciding a summary judgment motion, all inferences "should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Pastore v. Bell Tel. Co. of Pa.*, 24 F.3d 508, 512 (3d Cir. 1994).

A federal court should grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Farrell v. Planters Lifesavers Co.,* 206 F.3d 271, 278 (3d Cir. 2000). In making this determination, "a court must view the facts in the light most favorable to the nonmoving party

and draw all inferences in that party's favor." *Armbruster v. Unisys Corp.*, 32 F.3d 768, 777 (3d Cir. 1994). The Court need not accept mere conclusory allegations, whether they are made in the complaint or a sworn statement. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990). In deciding a motion for summary judgment, the court's function is not to make credibility determinations, weigh evidence, or draw inferences from the facts. *Anderson*, 477 U.S. at 249. Rather, the court must simply "determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

IV. **DISCUSSION**

  A. THE ACTIONS OF PENNSYLVANIA OFFICERS DID NOT VIOLATE THE UNIFORM EXTRADITION ACT.

Dixon contends that in order to be turned over to New York authorities, pursuant to the Uniform Criminal Extradition Act, he must have been formally arrested and charged in Pennsylvania and brought before a Pennsylvania judge in an extradition proceeding. (Doc. 119, at 7). Under the Act, "it is the duty of the Governor of this Commonwealth to have arrested and delivered up to the executive authority of any other state of the United States any person charged in that state with treason, felony or other crime, who has fled from justice and is found in this Commonwealth." 42 Pa.C.S.A. § 9123. Upon demand by the state from which the accused has fled, the Governor reviews the demand and may sign a warrant of arrest reciting the facts necessary and validity of its issuance. 42 Pa.C.S.A. § 9128. "No person arrested upon such warrant shall be delivered over to the agent whom the executive authority demanding him shall have appointed to receive him unless he shall first be taken forthwith before a judge of a court of record in this Commonwealth who shall inform him of the demand made for his surrender and of the crime with which he is charged . . ." 42 Pa.C.S.A. § 9131. Further, any

person brought before the judge upon such demand may apply for a writ of habeas corpus challenging the legality of the arrest, whereupon a reasonable time is affixed for its resolution. 42 Pa.C.S.A. § 9131.

Dixon alleges he is an accused person and fugitive for the purposes of the statute. (Doc. 138, at 4). Williams submits that at no point in the PSP involvement was Dixon accused of a crime, therefore the Extradition Act does not apply. (Doc. 140, at 3). The undisputed evidence before the Court shows that no charges were pending at the time of the PSP involvement. At the time Williams found Dixon at Elm's Tavern, only a "temporary want" had been issued; meaning Dixon was wanted for questioning. (Doc. 138, at 9). There was no warrant for his arrest[4] and Williams testified at a suppression hearing that he was not even sure that Dixon was a suspect at that time. (Doc. 119, at 49).

Without a warrant issued by either state, it cannot be said that Dixon fits the parameters of the Uniform Criminal Extradition Act. *See* 42 Pa.C.S.A. § 9131.[5] As no warrant was issued, charges pending, or any other criminal proceedings initiated, the Act plainly does not apply to Dixon. Despite Dixon's contention he qualifies as a fugitive and thus should have been arrested and brought before a Pennsylvania judge, he does not qualify under the law of Pennsylvania as a fugitive. *See Com. V. Matola*, 74 Pa. D. & C. 515, 518-19 (Wash. Cnty. C.C.P. Aug. 17, 1950)

---

[4] (Doc. 119, at 44-45, 59, 62; Doc. 125, at 27).

[5] "No person arrested *upon such a warrant* shall be delivered," referring to a warrant issued by the Governor in response to a demand from the state seeking extradition, and "a judge of a court of record in this Commonwealth who shall inform [the accused] of the demand made for his surrender and *of the crime with which he is charged* . . ."

("If having been within a state, he is accused of having committed, while there, that which by its laws constitutes a crime, and, when he is sought to be subjected to criminal proceeding therefor, he has left its jurisdiction and is found within another state, he is a fugitive from justice."). In order to be a fugitive, it is necessary that the accused have fled the state, regardless if this departure was done in an attempt to escape the charges for a crime, and remain outside the state's territorial bounds when charges are brought. *See Matola*, 74 Pa. D. & C. at 518. Because no charges were brought until Dixon had returned to New York, he is not an accused or fugitive under Pennsylvania law or for the purposes of the Uniform Criminal Extradition Act. Accordingly, the Act does not apply to him and offers no relief.

    B. SUMMARY JUDGMENT SHOULD BE GRANTED IN DEFENDANTS' FAVOR.

Dixon moves for summary judgment on the basis that PSP did not have probable cause to either enter Elm's Tavern in search of him[6] or to detain him while waiting for the NYSP. (Doc. 119, at 8-14). Williams moves for summary judgment on the grounds that the NYSP did have a reasonable suspicion to stop and question Dixon, and this suspicion was imputed upon the PSP via the "collective knowledge doctrine." (Doc. 125, at 8-11).

---

[6] Dixon's reliance on a lack of probable cause for police to enter Elm's is misplaced. The Fourth Amendment protects "people, not places." *Katz v. United States*, 389 U.S. 346, 351 (1967). Chiefly, it protects people in places where "an individual may harbor a reasonable expectation of privacy." *Terry v. Ohio*, 392 U.S. 1, 9 (1968) (internal citations omitted). As Dixon was in a publicly accessible bar, and by Dixon's own admission, police received permission from the bar's owner to enter while looking for him, a warrant based on probable cause was unnecessary.

1. **Collective Knowledge Doctrine**

The collective knowledge doctrine allows imputation of one law enforcement officer's knowledge to another officer who actually makes a stop, even if the latter does not possess all relevant facts. *United States v. Gonzalez*, 630 F. App'x 157, 161–62 (3d Cir. 2015), cert. denied, 136 S. Ct. 1529, 194 L. Ed. 2d 604 (2016); *see United States v. Whitfield*, 634 F.3d 741, 745 (3d Cir.2010); *see also United States v. Robertson*, 305 F.3d 164, 168 (3d Cir.2002) ("[R]easonable suspicion can be based on information gathered from another person."). The doctrine allows the "police ... to act on the strength" of work done by fellow officers. *See Whiteley v. Warden*, 401 U.S. 560, 568, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971). Under the rule, determinations concerning the existence of reasonable suspicion can be made based on the knowledge of the officer conveying the information, not on "whether those relying on the [information] were themselves aware of the specific facts which led their colleagues to seek their assistance." *United States v. Hensley*, 469 U.S. 221, 231 (1985). Thus, "[t]he legality of a seizure based solely on statements issued by fellow officers depends on whether the officers who issued the statements possessed the requisite basis to seize the suspect." *Rogers v. Powell*, 120 F.3d 446, 453 (3d Cir.1997) (*citing Hensley*, 469 U.S. at 231–32, 105 S.Ct. 675) (emphasis omitted).

2. **Sufficient Cause Existed for the New York State Police to Stop Dixon for Questioning**

The Fourth Amendment prohibits a police officer from arresting a citizen except upon probable cause. *Orsatti v. N.J. State Police,* 71 F.3d 480, 482 (3d Cir.1995) (citing *Papachristou v. City of Jacksonville,* 405 U.S. 156 (1972)). "[P]robable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be

8

arrested." *Orsatti,* 71 F.3d at 483. However, "police may stop persons in the absence of probable cause under limited circumstances." *United States v. Hensley*, 469 U.S. 221, 226 (1985). "[O]fficers making a stop to investigate past crimes may have a wider range of opportunity to choose the time and circumstances of the stop." *Hensley*, 469 U.S. at 228-29 (citing *Brown v. Texas*, 443 U.S. 47, 51 (1979)). Further, the Court found that:

> where police have been unable to locate a person suspected of involvement in a past crime, the ability to briefly stop that person, ask questions, or check identification in the absence of probable cause promotes the strong government interest in solving crimes and bringing offenders to justice. Restraining police action until after probable cause is obtained would not only hinder the investigation, but might also enable the suspect to flee in the interim and to remain at large. Particularly in the context of felonies or crimes involving a threat to public safety, it is in the public interest that the crime be solved and the suspect detained as promptly as possible. The law enforcement interests at stake in these circumstances outweigh the individual's interest to be free of a stop and detention that is no more extensive than permissible in the investigation of imminent or ongoing crimes.
>
> *Hensley*, 469 U.S. at 229.

The Supreme Court ruled that seizure of a person made on reliance of statements by fellow officers:

> turns on whether the officers who *issued* the [statements] possessed probable cause to make the arrest. It does not turn on whether those relying on the [statements] were themselves aware of the specific facts which led their colleagues to seek their assistance. In an era when criminal suspects are increasingly mobile and increasingly likely to flee across jurisdictional boundaries, this rule is a matter of common sense: it minimizes the volume of information concerning suspects that must be transmitted to other jurisdictions and enables police in one jurisdiction to act promptly in reliance on information from another jurisdiction.
>
> *Hensley*, 469 U.S. at 231.

In that case, a flyer issued by police in Ohio identified a person as "wanted," but did not identify him as a suspect or advise that a warrant existed for his arrest. *Hensley*, 469 U.S. at 229.

However, the flyer did describe the person sought, the underlying criminal act he was sought in in connection with, and the date and time of its occurrence. *Hensley*, 469 U.S. at 223. The Court found the police in Ohio had sufficient information "to arouse a reasonable suspicion of criminal activity by [the subject identified] and to constitute the specific and articulable facts needed to underly a stop." *Hensley*, 469 U.S. at 234. This reasonable suspicion extended to the police in Kentucky who saw the flyer and stopped a vehicle with a driver matching the description on the flyer. *Hensley*, 469 U.S. at 234. The officers conducting the stop had no knowledge whether or not a warrant existed, and neither party to the case asserted that Ohio or Kentucky police had probable cause to effectuate a stop upon the person identified. Despite this, the Court found "[a] brief stop and detention at the earliest opportunity after the suspicion arose is fully consistent with the principles of the Fourth Amendment." *Hensley*, 469 U.S. at 234. Finding that "[a]n objective reading of the entire flyer would lead an experienced officer to conclude that [the person] was at least wanted for questioning and investigation[.]" *Hensley*, 469 U.S. at 234. "[W]hat matters is that the stop and detention that occurred were in fact no more intrusive than would have been permitted an experienced officer on an objective reading of the flyer." *Hensley*, 469 U.S. at 234-35.

In this case, Williams spoke directly with the NYSP, who presented a description of Dixon (Doc. 119, at 29) and informed him that Dixon was wanted for questioning in connection with a homicide. (Doc. 119, at 49). The NYSP had sufficient information justifying a stop of Dixon under a reasonable suspicion standard. (Doc. 124, at 15-25). This reasonable suspicion justifies a stop by police acting upon the facts underlying it, even where not obtained by firsthand knowledge. *See Rogers v. Powell*, 120 F.3d 446, 453 (3d Cir. 1997). The only facts in dispute surrounding the detainment of Dixon are the voluntariness of his compliance and the

length of time he was detained as he and Williams waited for the NYSP. These facts are not material to the issue of whether the NYSP, and therefore Williams, had reasonable suspicion to stop Dixon. The undisputed material facts in the record before this Court indicate that the NYSP had reasonable suspicion to stop Dixon (Doc. 124, at 15-25), and pursuant to the collective knowledge doctrine, that same knowledge and suspicion is imputed to Williams. As such, summary judgment should be granted in Williams' favor on Dixon's Fourth Amendment claim.

V. **RECOMMENDATION**

Based on the foregoing, the Court recommends that:

1. Plaintiff's motion for summary judgment (Doc. 119) be **DENIED;**

2. Defendant's motion for summary judgment (Doc. 123) be **GRANTED**; and

3. As no other claims remain, the Clerk be directed to **CLOSE** this case.

Dated: January 23, 2017                                    *s/ Karoline Mehalchick*
                                                           **KAROLINE MEHALCHICK**
                                                           **United States Magistrate Judge**

# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOSEPH EDWARD DIXON,<br><br>            Plaintiff,<br><br>v.<br><br>ROGER WILLIAMS, et al.,<br><br>            Defendants. | CIVIL ACTION NO. 4:13-CV-02762<br><br>(BRANN, J.)<br>(MEHALCHICK, M.J.) |

## NOTICE

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing **Report and Recommendation** dated **January 23, 2017**.

Any party may obtain a review of the Report and Recommendation pursuant to Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636(b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

**Dated: January 23, 2017**

                                                              *s/ Karoline Mehalchick*
                                                           **KAROLINE MEHALCHICK**
                                                         **United States Magistrate Judge**